UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2004 JUL 1 PM 2 15

CLERK
DEPUTY CLERK

| | |
|---|---|
| CARL HOFFMAN | ) |
| | ) |
| | ) |
| v. | ) Civil File No. 2:04 cv 163 |
| | ) |
| | ) |
| | ) |
| ADE SOFTWARE CORP., | ) |
| ROBERT M. HARDY and | ) |
| ROBERT ABBE | ) |

## COMPLAINT

NOW COMES Carl Hoffman and for his complaint states as follows:

### JURISDICTIONAL ALLEGATIONS

1.      Plaintiff, Carl Hoffman, is a resident and citizen of the State of Vermont.

2.      Defendant ADE Software Corporation (ADE) is a Massachusetts corporation having its principal offices in Massachusetts.

3.      Defendant Robert W. Hardy (Hardy) is believed to be a citizen of the State of Mississippi, but in any event, is not a citizen or resident of the State of Vermont.

4.      Defendant Robert Abbe (Abbe) is believed to be a citizen of the Commonwealth of Massachusetts.

4.      The amount in controversy in this matter, exclusive of interest and costs, is in excess of $250,000.

5.      Plaintiff's civil rights claims asserted herein arise under the Third and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. §§ 1982 and 1985.

### FACTUAL ALLEGATIONS

1

6.  Commencing in March, 1997, Plaintiff was employed by LPA, Inc., a New Yor5k corporation, pursuant to a written employment contract.

7.  Defendant Hardy was until September 17, 1997, an officer of LPA and general manager of LPA's Vermont operations based in its Williston, Vermont office. After approximately September 17, 1997, Hardy was an officer of ADE and general manager of ADE's Vermont based business operations until his employment with ADE terminated during the month of March, 1998.

8.  Defendant Abbe was at all relevant times hereto the president and chief operating officer of Defendant ADE with full and final authority over litigation initiated by ADE in Vermont.

9.  In late summer of 1997, Defendant Hardy announced to the Vermont based employees of LPA that LPA's Vermont-based business was going to be sold to Defendant ADE and that the Vermont based employees of LPA would be expected to execute new employment contracts with Defendant ADE.

10. On Saturday, September 5, 1997, Plaintiff informed Defendant Hardy of his intent to resign his employment with LPA two weeks thereafter at or around the expected date of sale of LPA's Vermont-based business to Defendant ADE.

11. In response to an inquiry from Defendant Hardy, Plaintiff told Hardy that he was entertaining three offers of new employment, one of which was with KLA-Tencor, Inc. as a salesman of that company's CIMA products.

12. Later on September 5, 1997, after Plaintiff had left the LPA premises, Defendant Hardy prepared and left on Plaintiff's desk a memorandum terminating Plaintiff's employment

with LPA immediately.

13. At the same time Defendant Hardy mailed a letter to KLA-Tencor, Inc. demanding that KLA-Tencor withdraw its offer of employment to Plaintiff Hoffman and threatening litigation if it did not do so.

14. On or about September 17, 1997, Plaintiff and KLA-Tencor entered into an employment contract pursuant to which Plaintiff was engaged as a sales person for KLA-Tencor's CIMA line of products.

15. As was known to all Defendants, Plaintiff's activities as a salesman for KLA-Tencor's CIMA products did not involve any activity constituting direct competition with LPA, Inc. in violation of the covenant not to compete contained in the terminated employment contract between Plaintiff and LPA.

16. On or about September 17, 1997, LPA sold its Vermont-based business assets to Defendant ADE. Included in the transaction was an assignment to ADE of the terminated employment contract between Plaintiff and LPA..

17. Upon the consummation of the sale, Defendant Hardy became an officer of ADE and the general manager of ADE's Vermont-based operations.

18. Shortly after the transaction between LPA and ADE was completed, Defendant Hardy and other officers of ADE, including Defendant Abbe, acting for the purpose of punishing Plaintiff for failing to continue his employment with ADE's Vermont-based business and for the purpose of intimidating other employees of ADE's Vermont-based business, devised and executed a plan to interfere with and destroy Plaintiff's contractual relationship with KLA-Tencor and to deprive Plaintiff of his rights and benefits under said contract and to further deprive Plaintiff of his

3

liberty and property rights without due process of law and in violation of his equal protection rights.

19. As part of the plan and in order to attain its elicit objectives, ADE filed a verified complaint signed by Defendant Hardy in the Chittenden Superior Court for the State of Vermont seeking a preliminary injunction prohibiting Plaintiff from fulfilling his employment duties with KLA-Tencor, permanent injunctive relief to the same effect, and monetary damages. The Complaint included a demand for a jury trial.

20. The verified complaint filed by Defendant ADE and executed under oath by Defendant Hardy included the following knowingly false statements:

a. That Plaintiff was in breach of the covenant not to compete contained in the terminated employment contract between Plaintiff and LPA.

b. That Plaintiff had misappropriated trade secrets and other confidential information of ADE, which he was in the process of making known to KLA-Tencor.

c. That ADE would suffer irreparable harm if the Court did not prohibit Plaintiff from performing his employment activities under his employment contract with KLA-Tencor.

21. In furtherance of the plan to destroy Plaintiff's contractual rights and to deprive him of his due process and equal protection rights, Defendant ADE demanded, pursuant to the Vermont Rules of Civil Procedure, that the Chittenden Superior Court conduct a preliminary injunction hearing.

22. Pursuant to said demand, a preliminary injunction hearing was scheduled and held shortly after the complaint was filed in the Chittenden Superior Court.

23. At the preliminary injunction hearing, Defendant Hardy, presented additional knowingly false testimony and orchestrated the presentation of knowingly false testimony by other ADE employees for the purpose of inducing the Chittenden Superior Court to issue a preliminary injunction order prohibiting Plaintiff from fulfilling his duties under his employment contract with KLA-Tencor. Among other things, Defendant Hardy, acting on behalf of Defendant ADE, presented, or orchestrated the presentation by others of knowingly false testimony to the following effect:

a. That Plaintiff had misappropriated trade secrets and other confidential information of ADE and was in the process of disclosing or threatening to disclose the misappropriated trade secrets and confidential information to KLA-Tencor.

b. That KLA's CIMA line of products were competitive with products and services offered by Defendant ADE.

c. That ADE would be irreparably harmed unless Plaintiff was enjoined from working for KLA-Tencor as a salesman of that company's CIMA products.

24. On the basis of the knowingly false testimony presented on behalf of ADE by or under the direction of Defendant Hardy, the Chittenden Superior Court determined that ADE was likely to succeed in establishing at a trial on the merits that Plaintiff was in violation of the covenant not to compete contained in the terminated employment contract; that ADE had demonstrated a propensity on the part of Plaintiff to misappropriate confidential information; and that ADE would be irreparably harmed unless the Court enjoined Plaintiff's further employment activities with KLA-Tencor.

5

25. The Chittenden Superior Court, relying upon testimony known by Defendants ADE and Hardy to be false, issued a preliminary injunction order prohibiting Plaintiff from further employment with KLA-Tencor until further order of the court.

26. Defendant ADE, acting under color of state law, immediately began enforcement of the preliminary injunction order issued by the Chittenden Superior Court.

27. In the period of time following the issuance and initial enforcement of the preliminary injunction, various ADE employees began notifying officials of ADE that Defendant Hardy had presented knowingly false and misleading information to the Chittenden Superior Court for purposes of inducing the court to issue its preliminary injunction order.

28. In March, 1998, the employment relationship between ADE and Hardy was terminated. After Defendant Hardy's employment with ADE was terminated, Defendant Abbe was informed in writing by an employee that he had personal knowledge that Defendant Hardy's testimony at the preliminary injunction hearing to the effect that Plaintiff had removed confidential documents from his office was false and requested that Defendant Abbe take action to suspend enforcement of the preliminary injunction..

29. After the termination of Defendant Hardy's employment with Defendant ADE, the successor to Defendant Hardy as the general manager of the Vermont-based operations, informed Defendant Abbe that Plaintiff's employment with KLA-Tencor presented no threat of harm to Defendant ADE and suggested that the lawsuit against Plaintiff should be dismissed and that enforcement of the preliminary injunction should be discontinued.

30. In the period of time following the issuance of the preliminary injunction order until some time in July, 1998, KLA-Tencor had held Plaintiff's position open. After the President of

6

ADE was presented with information from ADE employees indicating that Defendant Hardy had acted maliciously and vindictively in presenting and orchestrating the presentation of knowingly false testimony to the Chittenden Superior Court, Defendants ADE and Abbe nevertheless refused to discontinue the preliminary injunction.

31. Upon the refusal of Defendant ADE to suspend the operation of the preliminary injunction, KLA-Tencor could no longer hold Plaintiff's employment position open and consequently terminated the contract of employment between Plaintiff and KLA-Tencor.

32. Approximately two months after the Plaintiff's contract with KLA was terminated, Defendant ADE, knowing that it could not produce evidence to support its claims at a trial on the merits, dismissed its lawsuit against Plaintiff and agreed to the suspension of the preliminary injunction order.

## COUNT ONE

By their actions described herein, Defendants tortiously interfered with and destroyed Plaintiff's contract rights under his employment contract with KLA-Tencor.

WHEREFORE, Plaintiff demands judgment for his compensatory damages, including lost earnings, future lost earnings, and legal fees incurred by Plaintiff in defending the claims asserted against him in the underlying state court action, as well as punitive damages.

## COUNT TWO

By their actions described herein, Defendants deprived Plaintiff of his property and contract rights as well as his liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of 42 U.S.C. § 1982.

WHEREFORE Plaintiff demands judgment for his compensatory damages, punitive damages and his attorney's fees incurred in connection with the prosecution of this action.

## COUNT THREE

By their actions described herein, Defendants deprived Plaintiff of his right to equal protection of the law secured under the provisions of the United States Constitution in violation of 42 U.S.C. § 1985.

WHEREFORE Plaintiff demands judgment for his compensatory damages and punitive damages as well as his attorney's fees incurred in connection with the prosecution of this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated at Burlington, this 30th day of June, 2004.

*Michael B. Clapp*
Michael B. Clapp, Esquire
Attorney for Plaintiff Hoffman

8